## In re Transfer of Liquor License

*Harry A. Rutenberg*, for petitioner.

*Peter P. Jurchak*, for Pennsylvania Liquor Control Board.

GORDON, JR., P. J., January 11, 1943.—This is an appeal from an order of the Pennsylvania Liquor Control Board refusing to transfer a retail restaurant liquor license from premises 106-108 Granite Street, Philadelphia, to 3716 North Broad Street, Philadelphia.

The transfer asked for is to both a new licensee and a new location. The respective locations differ radically in character, as well as in situs. With the findings of the board that the new applicant is a person of good reputation and that the proposed new premises comply with the physical requirements prescribed by law for licensed premises, we are in agreement. The refusal of the transfer by the board, however, was based upon other considerations which we think are well founded,

and within the discretionary powers possessed by it with respect to such transfers. At the public hearing held by the board on this application many protests, both written and oral, were received against the licensing of an additional place for the sale of liquor in the new locality. It appears from the testimony that in that vicinity, the intersection of Broad Street and Erie Avenue, there are already some 10 or 11 licensed establishments. While the intersection is heavily traveled by all forms of transportation and is well developed commercially at the intersection itself, the immediate neighborhood remains a desirable residential district. Under the testimony presented it is apparent that, because of the large number of liquor establishments now operating in this neighborhood, numerous objectionable incidents have already occurred, and that the addition of another license in the same locality would only tend to increase such disturbances and thus to reduce the desirability of the district for both residential and reputable commercial purposes. The board refused the transfer upon this ground, and, in doing so, we think its action was neither arbitrary nor unreasonable. Indeed, our own conclusion, based upon the testimony taken by the board which, by stipulation of counsel, is considered with the same force and effect as if taken de novo before us, is in entire agreement with that of the board. Another liquor license in the same locality is neither necessary to serve a public convenience, nor desirable from the standpoint of local peace and order, and would be granted in the face of a large and respectable body of protest from citizens of the neighborhood.

The contention of counsel for the appellant is that, since the applicant has been found by both the board and us to be of good repute and the premises meet the physical requirements, the applicant's right to a transfer is absolute, that under the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as amended

by the Pennsylvania Liquor Control Act of July 18, 1935, P. L. 1246, and the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, we have no discretionary power in the matter, and that our duty, as well as that of the board, to transfer the license in these circumstances is mandatory. It is neither necessary nor desirable to attempt to define with any degree of precision the extent of the board's discretion or of ours, as a final appellate tribunal acting de novo, in the granting of licenses and transfers under the act. The case before us does not call for a fixing of limits to our powers, but only for a determination of first, whether the board has any discretionary power to refuse a transfer once it determines an applicant to be of good repute and that his place meets the legal requirements as to its construction and equipment, and second, if it has such power, whether, in the instant circumstances, the board acted reasonably and in the public interest. Our powers on appeal are the same as those of the board, and, while we act de novo as to matters of both law and fact, we would not be inclined to overrule an action of the board which was well within its discretionary powers, and not manifestly arbitrary or unreasonable.

On the question of the powers of the board the authorities appear to be in direct and hopeless conflict. Larkin's License, 35 D. & C. 684, Popp's License, 41 D. & C. 500, and Boerckel's Appeal, M. L. D. 810, the cases most strongly relied on by the appellant, hold that, except as to the character of the applicant and the conformity of his premises to the physical requirements of a licensed establishment, the board has no discretion whatever to refuse a transfer between either persons or places. On the other hand, in Appeal of Lynch, M. L. D. 1941, no. 795, Appeal of Shockowitz and Werndl, M. L. D. 1941, no. 806, and Brodsky's License, 44 D. & C. 227, the discretionary power of the board was recognized, and its refusal of a transfer upheld. These latter cases are, in our judg-

ment, supported by the sounder reasoning, and give effect to the legislative purpose as declared in section 3 of the Liquor Control Act of 1933, as amended by the Act of July 18, 1935, P. L. 1246, which directs that it "shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth . . .", and requires all its provisions "shall be liberally construed for the accomplishment of this purpose." It is true that there is no expressed grant of discretionary power to the board in the language of the act itself: neither is there any expressed denial of such a power, but its existence is at least impliedly recognized by the language of section 408, which provides, inter alia, that "The board is hereby authorized to transfer any license from one person to another, or from one place to another within the same municipality or both, as the board may determine . . ." We think that there is a measure of discretion in a liquor-licensing authority which is necessarily inherent in its fundamental nature, and which distinguishes it from a mere agency for the issuance of such licenses as mercantile, hunting, or dog licenses, which are primarily employed for purposes of taxation, rather than as an exercise of the police power over a business peculiarly requiring regulation in the public interest: See title to the Pennsylvania Liquor Control Act of November 29, 1933, "An Act to regulate and restrain the sale, importation, and use of certain alcoholic beverages . . ."

This distinction between a licensing authority which is a mere agency for the issuance of licenses and one which is created for the exercise of a phase of the police power of the Commonwealth places a liquor control board in the latter category because of the nature of the liquor traffic, which not only serves a proper public convenience, but is also universally recognized as tending, when unregulated, directly to threaten the

peace, order, and morals of a community. Unless such an authority possesses some measure of inherent residual discretion in issuing licenses the principal regulatory purpose for which it exists will be necessarily defeated. For example, the act forbids the granting of more than one license per thousand of the population, and this limits to 2,000 the number of licenses that may be outstanding at any one time in a city of 2,000,000 people. Certainly the board could not be compelled to grant all the 2,000 licenses permitted to Philadelphia within a single narrowly-restricted district of the city, if perchance the first 2,000 qualified applicants should apply for licenses in that district; nor similarly would the board be required to transfer all the city's liquor licenses to one locality on the bald demand of their holders. Such a concentration of the liquor traffic not only would deprive the vast majority of the people of a proper and convenient service to which they are entitled by entirely ignoring the general public convenience and requirements, but also it might seriously endanger property values as well as the peace and order of the particular section so injuriously affected. While it is altogether improbable that such concentration of licenses in one place would ever be sought by prospective licensees since the ordinary public demand for restaurant service in all sections of the city would naturally create a broader dispersion of such places, the position taken by the appellant, that the board has no discretion to limit, even within reason, the number of licenses in a particular district, would make such a result entirely possible; and the example given serves at least to test and refute the validity of the rule contended for. Hence, whatever may be the ultimate limits of the discretion possessed by the board in granting and transferring licenses, which we do not pretend to fix here, we think that it may decline to transfer licenses to a particular locality whenever the number of licensed establish-

ments already there is so great that a further increase of them beyond the general local public demand either would deprive other sections of their fair share of this service, or would strongly tend to create a public nuisance by immediately threatening the peace and order of the neighborhood.

The most carefully run restaurant or "taproom" is bound at times to create conditions which, through no fault of the proprietor, more or less disturb the peace and interfere with the comfortable and quiet enjoyment of their homes and places of business by the local residents. Such incidents are ordinarily insufficient in number, frequency, and magnitude to constitute a serious complaint against a single, or even a few, well-run establishments. There may well come a point, however, at which the combined effect of a multiplication of licenses within a small area would produce, or threaten, an intolerable situation in the nature of a public nuisance for which none of the licensees would be individually to blame. In such a case the board may properly exercise a broad and reasonable discretionary power to protect public "peace, order and morals" by refusing to grant additional licenses within that area. It is not required to wait until a threatened danger becomes a reality, but may act forehandedly in the matter, and the only fair and equitable method of distinguishing between equally unobjectionable licensees is to apply the rule of "first come, first served."

The saloon has been abolished in Pennsylvania by permitting licenses only for hotels, restaurants, and clubs. Thus the sale of intoxicants for consumption on the premises of the seller as a business in itself is regulated by confining it to establishments in which it is a mere adjunct of another lawful business. The legislative purpose behind such a regulation is apparent, and this purpose would be defeated if the number of restaurants in a locality were so much in excess of its eating requirements that the sale of liquor became the

principal part of their businesses. Surely the board could take cognizance of such a situation when it arises, and, by refusing additional licenses, prevent this circumvention of the legislative will.

We conclude, therefore, that a license may be refused in a particular neighborhood whenever the further granting of licenses therein would deprive other sections of a licensing district of that reasonable and adequate service to which they are entitled under the numerical limitations applicable to the district, or would fairly appear to threaten the creation of a public nuisance in the nature of an interference with public "peace, order and morals," or with the quiet and peaceable enjoyment of their properties by the citizens and residents of the affected neighborhood.

In the present case, as indicated above, there are now some 10 or more licensed establishments within 800 or 900 feet of the intersection here in question. Although it does not appear that those already there have been improperly operated, the inevitable consequences of the existing overconcentration of the liquor traffic at that point have become apparent, and the opening of more establishments in the same neighborhood would only aggravate a growing nuisance injurious to the public interest. It was for these reasons that we refused the transfer asked for, and sustained the action of the board.